UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Sheronda L. Parker,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>Andrew M. Saul, Commissioner of<br>Social Security,<br><br>　　　　　　Defendant. | Civil Action No. 5:19-3337-KDW<br><br><br><br><br>ORDER |

This social security matter is before the court pursuant to 28 U.S.C. § 636(c) and Local Civil Rule 83.VII.02 (D.S.C.) for final adjudication, with the consent of the parties, of Plaintiff's petition for judicial review. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision the Commissioner of Social Security ("Commissioner"), denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to the Social Security Act ("the Act"). Having carefully considered the parties' submissions and the applicable law, the court reverses and remands the Commissioner's decision for the reasons discussed herein.

I.　　Relevant Background

　　A.　　Procedural History

In October 2013,[1] Plaintiff applied for DIB alleging she became unable to work on February 7, 2011. Tr. 297. In her Application Summary, Plaintiff indicated that a previous application had been filed with Social Security Administration,[2] and that she intended to file for

---

[1] The Application Summary is dated October 22, 2013; however, the Disability Determination and Transmittal indicates a filing date of October 21, 2013. Tr. 154.
[2] The record contains a Disability Determination and Transmittal for a disability claim filed on April 24, 2012. Tr. 132. On January 8, 2013, the determination at the initial level was "claimant not disabled." *Id.*

SSI. *Id.* Plaintiff's October 2013 claim for disability was denied initially on July 28, 2014, Tr. 154, and on reconsideration on March 23, 2015, Tr. 178. On May 26, 2015, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 198-201. On June 8, 2016, Plaintiff submitted a request seeking to have her claim expedited as a hardship case. Tr. 213. A hearing was scheduled for July 18, 2016. Tr. 226. Plaintiff appeared before ALJ Ronald Sweeda on July 18, 2016; however, no testimony was taken as Plaintiff indicated that she needed additional time to find representation. Tr. 109-14.

Plaintiff subsequently filed an application for SSI. The Application Summary is dated September 9, 2016. Tr. 315-20.

Plaintiff's hearing was rescheduled for September 23, 2016, Tr. 245, and Attorney J. Kory Strain of South Carolina Legal Services appeared for Plaintiff, Tr. 264. ALJ Sweeda conducted the administrative hearing on September 23, 2016, taking testimony from Plaintiff and from Vocational Expert ("VE") Tonetta Watson Coleman. Tr. 80-104. The ALJ denied Plaintiff's claim for both DIB and SSI in a decision dated April 10, 2017. Tr. 13-31. The decision indicated that Plaintiff's SSI application date was August 4, 2016. Tr. 16, 31. The ALJ referenced a date last insured ("DLI") of September 30, 2015. Tr. 18.

Plaintiff submitted a Request for Review of Hearing Decision/Order dated June 2, 2017. Tr. 293. On September 18, 2017, the Appeals Council denied the request for review. Tr. 1-4. The Appeals Council acknowledged Plaintiff's submission of additional medical records but found the "evidence does not show a reasonable probability that it would change the outcome of the decision." Tr. 2. After the Appeals Council denied her request for review, Plaintiff appealed the unfavorable decision to the United States District Court for the District of South Carolina arguing that the Appeals Council committed reversible error by refusing to consider the new evidence she

had submitted. Tr. 1163. Plaintiff also alleged the ALJ failed to properly evaluate the medical opinion evidence, failed to properly evaluate her subjective complaints, and failed to meet the Commissioner's burden at Step Five of the sequential evaluation process. *Id.* Plaintiff obtained an Order, filed January 2, 2019, reversing the Commissioner's decision, and remanding the case for further proceedings based on the findings in the Report and Recommendation ("R&R") of the Magistrate Judge. Tr. 1157-58. The R&R recommended remand based on the failure of the Appeals Council to consider the additional evidence, noting that because "the treatment notes from the relevant time period conflict with other evidence in the record, the ALJ may have reached a different conclusion had he had the benefit of considering them." Tr. 1166. Based on the court's Order, on February 4, 2019, the Appeals Council vacated the final decision of the Commissioner and remanded the matter "for further proceedings consistent with the order of the court." Tr. 1171.

ALJ Sweeda conducted a second administrative hearing on July 3, 2019, taking testimony from Plaintiff and VE Dawn Bergren. Tr. 1124-55. On September 23, 2019, the ALJ issued another unfavorable decision denying Plaintiff's claim. Tr. 1098-1115. Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed on November 27, 2019.[3] ECF No. 1.

    B.    Plaintiff's Background

Born in May 1969, Plaintiff was 41years old on her alleged onset date of February 7, 2011. Tr. 391. In her February 2014 form Disability Report-Adult, Plaintiff indicated that she completed the 12th grade in 1987 and had no specialized job training, trade, or vocational school. Tr. 395.

---

[3] Pursuant to the regulations, "when a case is remanded by a Federal court for further consideration, the decision of the administrative law judge will become the final decision of the Commissioner after remand on your case unless the Appeals Council assumes jurisdiction of the case." 20 C.F.R. § 404.984(a). Here, the Appeals Council did not assume jurisdiction.

Plaintiff listed jobs at Verizon Wireless Communication (March 1994 – Oct. 2008) and ECPI University Technology School (Aug. 2010 – Feb. 2011). *Id.* Plaintiff indicated that she stopped working on February 7, 2011 due to her conditions which she listed as: left shoulder, arm and hand nerve damage; severe lower back injury (right leg, pelvic area and feet); debilitating migraines; PTSD; severe depression; severe panic attacks; severe anxiety attacks; insomnia; and diabetes. Tr. 394.

In a Disability Report-Appeal dated October 1, 2014, Plaintiff indicated changes in her condition since her last disability report. Tr. 425. Plaintiff noted that her "[PTSD] had gotten worse – panic attacks, depression, thoughts of hurting myself, bipolar disorder episodes and violent episodes." *Id.* Plaintiff also indicated additional limitations that occurred in April 2014 of "severe memory loss and loss of time and pain from wrist to fingertips." *Id.* Plaintiff noted new illnesses, injuries, or conditions of "uncontrolled sugar levels and blurred vision and cutting episodes." *Id.* Plaintiff indicated that her conditions have affected her ability to care for her personal needs because she is "unable to sit or stand for more than 15 min. unable to utilize my left arm, shoulder, wrist or hand due to severe nerve damage, uncontrollable spasms and tremors, [severe] panic attacks with unfamiliar circumstances." Tr. 428. Plaintiff noted that she is "unable to work, unable to shop unsupervised, all razors removed from my home, bathing is a hard task unable to cook without supervision." *Id.*

In a subsequent Disability Report-Appeal dated May 30, 2015, Plaintiff indicated changes in her medical conditions that occurred in December 2014 including an increase of her PTSD problems, left arm weakness, shoulder pain, migraines, back pain, and diabetes. Tr. 445. Plaintiff also identified new conditions as of April 2015 of chronic violent outbursts and chronic spasms in her left shoulder, arm, and hand. *Id.* Plaintiff noted changes in her daily activities resulting from

4

the changes in her medical conditions. Tr. 448. She indicated that she is "severely" unable to use left arm to bathe; she has memory challenges that make it impossible for her to remember to take her medications on time; her personal hygiene has deteriorated; and she is unable to be around strangers. *Id.*

      C.    Administrative Proceedings

Plaintiff appeared with counsel for her second administrative hearing in Charleston, SC before ALJ Ronald Sweeda on July 3, 2019. Tr. 1124-55. Plaintiff testified, along VE Dawn Bergren. Tr. 1125.

      1.    Plaintiff's Testimony

In response to questions from the ALJ Plaintiff affirmed that, as she testified during the first hearing, she is 5'8" tall and weighed "around 210 pounds." Tr. 1128. Plaintiff stated that she did not have a driver's license, and that she did not lose it, but that she let it expire. *Id.* Plaintiff confirmed that she has a high school education, can read and write, and has not worked since her alleged onset date and stopped working as a college recruiter after a motor vehicle accident. *Id.* Plaintiff also confirmed that she settled her Worker's Compensation case in 2014. Tr. 1129. The ALJ noted that at the first hearing Plaintiff indicated she was "being seen by Palmetto Primary Care about every three to four months." *Id.* Plaintiff testified that she did not believe that was accurate and thought "it was a little more spread out than that, sir, only because—affordability." *Id.* Plaintiff confirmed her prior testimony regarding continued pain in her left wrist with less than full use of that wrist. *Id.* Plaintiff testified that she is right-handed and has decreased strength in her left wrist and hand. *Id.* Plaintiff affirmed her testimony that she suffers from PTSD, panic attacks, bipolar disorder, and agoraphobia. Tr. 1129-30. Plaintiff testified that the agoraphobia "started right after the accident, in February of 2011." Tr. 1130. Plaintiff confirmed that at the first

5

hearing she indicated that she could sit and stand for about 15 minutes each. *Id.* The ALJ noted that Plaintiff was seen by Dr. Naylor of Palmetto Lowcountry Behavioral Health in 2012 and 2013, and asked Plaintiff whether she had received any specialized mental health treatment from 2013 until 2016 when she first went to Dorchester Mental Health. *Id.* Plaintiff testified that she was unable to recall the dates, and did not think the gap was that large, but acknowledged that she had gaps in treatment due to financial constraints. Tr. 1131. The ALJ asked Plaintiff's counsel who was the signatory on Exhibit 28F;[4] counsel indicated that they thought it was Dr. Castellone, the primary care provider at Palmetto Health. *Id.* Counsel also noted that the typed statement at Exhibit 27F[5] was from the physician's assistant, Sandi Engler. *Id.* Counsel indicated that Dr. Castellone was Ms. Engler's supervising physician at Palmetto Primary Care. Tr. 1131-32. Plaintiff testified that she could not recall being seen by Dr. Castellone, but she knew that Ms. Engler worked under Dr. Castellone because he signed her paperwork. Tr. 1132. The ALJ noted that it was common practice for physician's assistants to fill out rating forms and then have the doctors sign off on it. Tr. 1132-33.

Plaintiff confirmed that at the time of the accident she was a college recruiter and had worked prior to that as a substitute teacher and as a training manager. Tr. 1133. Plaintiff testified that she worked as a training manager for Verizon Communications and she described her responsibilities as training customer service representatives and managers on the equipment and new technical capabilities. Tr. 1133-34. She testified that she also used to write the curriculum and develop the training for Verizon Communications. Tr. 1134.

---

[4] Exhibit 28F is a Medical Source Statement of Ability To Do Work-Related Activities (Mental) dated July 15, 2016. Tr. 1003-05. The signature is illegible. Tr. 1005.
[5] Exhibit 27F is a one-paragraph letter from Palmetto Primary Care dated April 26, 2016 and signed by a physician's assistant. The letter indicates that Plaintiff "suffers from severe anxiety, which causes agoraphobia. The agoraphobia causes the patient to be homebound." Tr. 1002.

Counsel indicated that his questions would concern the period from February 2011 through September 2015. Tr. 1134. In response to questions from her attorney Plaintiff confirmed that in May 2009 she fell and shattered and crushed her left forearm. Tr. 1134-35. Plaintiff testified that a plate and screws were used to repair her arm. Tr. 1135. Plaintiff stated that she had a long recovery period but eventually got the recruiting job with ECPI where she "was able to get back to typing and get back to writing." *Id.* Plaintiff confirmed that while she was being seen by doctors related to her Social Security claim in 2014 and 2015, she reported that she was very limited in the use of her left hand and wrist. Tr. 1136. Plaintiff explained that in the intervening period she had reinjured her wrist in a car accident. Tr. 1137. Plaintiff also confirmed that she had two surgeries after the car accident for carpal tunnel and ulnar nerves, and elbow surgery. *Id.* Plaintiff testified that since 2015 she has not seen improvement in the use of her left hand and that it has gotten worse. *Id.* Counsel asked Plaintiff how much she was able to use her left hand in the period up through September 2015. *Id.* Plaintiff testified, "[n]ot much" and that she would try to use her hand to instinctively reach for or pick up an object and would drop it. Tr. 1137-38. Plaintiff stated that during that period she could not have used her left hand for typing, writing, or desk work for two hours in an eight-hour day. Tr. 1138. Plaintiff also testified regarding limitations in her left shoulder. *Id.* Plaintiff stated that during the period from 2011 through 2015 she was unable to lift her arm "midway" or shoulder height without getting a sharp pain going upwards to her neck. Tr. 1139. Plaintiff stated that she was told by a doctor that the operation on her elbow "wasn't the right operation, that it's a nerve on – [her] neck" at the base of her skull. *Id.* Plaintiff testified that her health insurance will not pay for any of these injuries because it was "Worker's Comp, and it was a car accident." Tr. 1140. Plaintiff confirmed that she has been unable to get any other treatment. *Id.* Counsel asked Plaintiff why she stopped going to the Dorchester County Mental Health Center.

7

Tr. 1140. Plaintiff described the Center as a "madhouse" and explained that because she suffers from anxiety and agoraphobia it was a challenge for her just to go there. She stated that her husband was not allowed to accompany her inside and the waiting room would be filled with people, and sometimes the police would be there. Tr. 1140-41. Plaintiff stated that there would be "a lot of disturbance, and [she] would be so nervous and uncomfortable. By the time [she] would get back to where [she] was supposed to be, [she] would be a wreck, to the point where they would have to get [her husband] back there so [she] can calm down." Tr. 1141. Counsel noted that the State agency sent her to doctors in 2014-2016, and there was some indication that her mental state had worsened. Tr. 1142. Plaintiff testified that "there were a lot of things going on with [her] mental state between the night terrors and the depression." *Id.* Plaintiff stated that she was not sleeping, she could not focus, and she was cutting herself. *Id.* Plaintiff testified that she no longer has the night terrors and sleeps better, but she still has depression, anxiety, agoraphobia, and struggles with focusing. Tr. 1142-43. Plaintiff testified that it was "the combination of everything" that made it hard for her to "get through a regular day." Tr. 1143. Plaintiff stated that because of her hand she could not type for longer than 15 minutes or long enough to fill out applications, and she could not remember what she did on a job for 15 years. *Id.* She also stated that she had migraines that would last "four to five days twice a month." Tr. 1143-44. Plaintiff testified that she still gets migraines, but they do not last as long, and she takes "a lot of medicine for them now." Tr. 1144. Plaintiff stated that she takes ten different medications and a side effect is drowsiness. *Id.* Plaintiff testified that during the period up through 2016 she was taking trazodone and it would have her "laid out, sometimes." Tr. 1145. She stated that she was also taking medication to sleep, and to stop anxiety attacks. *Id.*

8

The ALJ resumed questioning and noted that in February 2015, during a visit to Palmetto Primary Care, another nurse practitioner indicated that her headaches were stress related. Tr. 1145. Plaintiff testified that she did not recall that visit, but she noted that she has gotten headaches that were different from migraines. *Id.*

### 2. VE's Testimony

VE Bergren described Plaintiff's past work as Training Instructor, Dictionary of Occupational Titles ("DOT") #166.227-010, light exertional level, SVP of 7; and Admissions Evaluator, DOT #205.367-010, sedentary exertional level, SVP of 6. Tr. 1146. The ALJ asked the VE to assume a person of Plaintiff's age, education, and work experience with the capacity to perform light work with the following limitations:

> No climbing ladders or scaffolds, occasional climbing ramps, stairs, stooping, kneeling, crouching, crawling, balancing. Occasional overhead reaching, frequent fingering and handling with the non-dominant left upper extremity. Can concentrate sufficiently in two-hour increments to perform simple, repetitive tasks. Occasional and casual contact with the general public. No work in a team setting. Occasional changes in work setting and procedure, and no production pace rate work.

Tr. 1146-47. The VE confirmed those limitations would preclude Plaintiff's past work, but she identified the following jobs that would be available: Small Parts Assembler, DOT #706.684-022, SVP 2, approximately 195,000 positions in the U.S.; Shipping/Receiving Weigher, DOT #222.387-074, SVP 2, approximately 71,000 positions in the U.S.; and Laundry Folder, DOT #369.687-018, SVP 2, approximately 443,000 positions in the U.S. Tr. 1147.

The ALJ asked what the effect would be of modifying the hypothetical to change fingering and handling with the non-dominant left upper extremity from frequent to occasional. Tr. 1147. The VE testified that modification would eliminate the work she identified and that she would not have any substitutes "due to the combination of manipulatives as well as the amount of public

9

contact allowed within the hypothetical." *Id.* The VE confirmed that her testimony was consistent with the DOT and the functional limitations described in the hypothetical questions, including reasoning level and overhead reaching based on her knowledge and experience. Tr. 1147-48.

Plaintiff's counsel had no questions for the VE. Tr. 1148. However, Plaintiff's counsel offered closing statements and there was further discussion.

### 3. Additional Testimony and Statements

Plaintiff's counsel began discussing Plaintiff's manipulative limitation. Tr. 1148. The ALJ interrupted to ask counsel to explain the notes for Palmetto Primary Care at the time of Plaintiff's DLI in which different examiners indicated normal motor function in all extremities. *Id.* Plaintiff interjected that these doctors never examined her hands. Tr. 1149. The ALJ asked Plaintiff about a 2014 medical treatment note from Dr. Santiago of Lowcountry Orthopedics found at Exhibit 21F/15.[6] Tr. 1149-50. The ALJ noted that there were no subsequent treatment notes and no indication that an EMG was done. Tr. 1150. Plaintiff testified that her insurance "wouldn't pay for anything" and it was not covered by Worker's Compensation because by that time her case was over. Tr. 1150-51. Plaintiff testified that additional medicals were not part of her settlement. Tr. 1151. In response to her attorney, Plaintiff testified that her insurance company considered it a pre-existing condition and refused to cover it. *Id.*

Counsel noted that in many cases doctors "who are treating someone for one thing" will make "general findings that aren't entirely accurate" but it was clear that during that time Plaintiff

---

[6] In Exhibit 21F/15, Plaintiff presented to Dr. Santiago, a hand specialist, complaining of left forearm pain. Tr. 971. Dr. Santiago assessed Plaintiff with complex regional pain syndrome and noted that "after lengthy discussion with the patient, the patient wished to proceed with my recommendation of further objective testing consisting of [left upper extremity] EMG/NCV to [rule out] compressive neuropathy. [Follow up] after EMG/NCV. Continue wrist braces/NSAIDs for comfort. Will obtain pain consult if EMG/NCV negative for stellate blocks." *Id.*

10

had a significant injury. Tr. 1152. The ALJ asked what Plaintiff's shoulder impairment was and counsel indicated that one doctor thought it was coming from Plaintiff's neck, but that there had not been an evaluation since the Worker's Compensation claim was concluded. Tr. 1153. Counsel opined that Plaintiff needed further evaluation regarding her shoulder, and the ALJ remarked "that's not going to happen with a DLI in September of 2015." *Id*. Counsel agreed but stated that the "more salient" impairment was "the hand and wrist impairment which is well documented in this record." Tr. 1153-54. Counsel also noted that in his "review of the primary care records with the physician's assistant that there's really no assessment of a hand or wrist impairment in those records." Tr. 1154.

II.     Discussion

    A.     The ALJ's Findings

In his September 23, 2019 decision, the ALJ made the following findings of fact and conclusions of law:

> 1.     The claimant meets the insured status requirements of the Social Security Act through September 30, 2015.
>
> 2.     The claimant has not engaged in substantial gainful activity since February 7, 2011, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq.*).
>
> 3.     The claimant has the following severe impairments: degenerative disc/joint disease, diabetes, left upper extremity traumatic injury, migraines, post-traumatic stress disorder, bipolar disorder, and organic mental disorder (20 CFR 404.1520(c) and 416.920(c)).
>
> 4.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

11

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except [t]he claimant cannot climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs, stoop, kneel, crouch, crawl, and balance. She can occasionally reach overhead and perform frequent handling and fingering with her non-dominant left upper extremity. She can concentrate sufficiently in two-hour increments to perform simple, repetitive tasks; can tolerate occasional and casual contact with the general public as well as occasional changes in work setting/procedure. She cannot perform production pace rate work and cannot work in a team setting.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on May 15, 1969 and was 41 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of jobs skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 7, 2011, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 1103-04, 1106, 1113-15.

    B. Legal Framework

        1. The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability," defined as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is working; (2) whether the claimant has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[7] (4) whether such impairment prevents claimant from performing PRW; and (5) whether the impairment prevents the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520, § 416.920. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision

---

[7] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, she will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii); § 416.920(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; § 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) and § 416.920(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he/she can return to past relevant work ("PRW") as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. § 404.1520(a), (b); § 416.920(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing the inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981)*; see generally Bowen*, 482 U.S. at 146. n.5 (regarding burdens of proof).

   2. The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner of Social Security made after a hearing to which he was a party. . .." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*,

14

*Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d at 290 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try [these cases] de novo, or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (explaining that, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high," as it means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that his conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

    C.    Analysis

Plaintiff alleges (1) the ALJ erred by invoking the DLI when evaluating the evidence in the case, which includes a claim for SSI benefits; (2) the ALJ erred by claiming the evidence supports a less restrictive residual functional capacity ("RFC") finding than articulated in the ALJ's first decision; (3) the ALJ again failed to properly evaluate the medical opinion evidence; (4) the ALJ's reasoning for discounting Plaintiff's subjective complaints is not sustainable; and

(5) the ALJ failed to carry the Commissioner's burden at Step Five of the sequential evaluation process. Pl.'s Br. 1, ECF No. 9. The Commissioner argues that substantial evidence supports the ALJ's finding that Plaintiff was not disabled. Def.'s Br. 19, ECF No. 11.

1. Consideration of Plaintiff's Date Last Insured

Plaintiff asserts that the despite the last finding in the ALJ's decision stating that Plaintiff has not been under a disability from February 7, 2011, through the date of the decision, September 23, 2019, the ALJ erred because throughout his decision he referred to Plaintiff's DLI—despite the existence of a claim for SSI. Pl.'s Br. 24. The Commissioner contends that despite the ALJ's references to the DLI, the ALJ's findings applied to the entire relevant period. Def.'s Br. 20. In reply Plaintiff argues that "the ALJ repeatedly cited the DLI as a basis for discounting evidence or suggesting the evidence is immaterial. At no point did the ALJ clarify that the evidence was only being discounted with regard to one of the claims being adjudicated, or engage in a second analysis of the same evidence brushed aside due to its relationship to the DLI." Pl.'s Reply Br. 2, ECF No. 16.

"The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 *et seq.,* provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 *et seq.,* provides benefits to indigent disabled persons." *Craig v. Chater*, 76 F.3d 585, 589 n. 1 (4th Cir. 1996). For DIB claims, benefits may be awarded only prior to the date last insured. However, SSI benefits may be awarded after a claimant is found disabled and has an SSI application on file. *See Newman v. Astrue*, No. 5:06-CV-00955, 2008 WL 4298550,

16

at *3 n. 3 (S.D.W. Va. Sept. 18, 2008) (citing *Moore v. Barnhart,* 405 F.3d 1208, 1211 (11th Cir. 2005)).

The period relevant to Plaintiff's DIB claim is between her alleged onset date of February 7, 2011, and her date last insured of September 30, 2015. The period relevant to Plaintiff's SSI claim is the time between her SSI application date and the date of the ALJ's September 23, 2019 decision. Evidence from the period between Plaintiff's DLI and her SSI application date is only relevant to the extent it could establish disability during one of the two relevant periods. *See Bird v. Comm'r Social Sec. Admin.,* 699 F.3d 337, 340 (4th Cir. 2012) (citing *Wooldridge v. Bowen,* 816 F.2d 157, 160 (4th Cir. 1987)).

Knowledge of the relevant dates is necessary before the court can undertake analysis of the ALJ's consideration of the evidence as it relates to Plaintiff's claim for SSI. As noted in the Procedural History section of this Order, it is not clear when Plaintiff actually filed for SSI. The Application Summary is dated **September 9, 2016**. Tr. 315-20. The ALJ's April 10, 2017 decision denying Plaintiff's claim for both DIB and SSI indicated a DIB application date of October 21, 2013 and an SSI application date of **August 4, 2016**.[8] Tr. 16, 31. However, the ALJ's September 23, 2019 decision denying Plaintiff's claim for DIB and SSI indicated an SSI application date of **May 26, 2015**. Tr. 1115. Plaintiff's Brief indicated an SSI application date of August 4, 2016, Pl.'s Br. 1, while the Commissioner's Brief indicated that Plaintiff filed for SSI "in September 2016," Def.'s Br. 2.

---

[8] In his April 2017 decision the ALJ also stated that both "claims were denied initially on July 18, 2014, and upon reconsideration on March 23, 2015" which would have been impossible for the SSI claim. Tr. 16. The court notes that there is nothing in the record before it that provides an initial or reconsidered evaluation/determination of Plaintiff's SSI claim.

The court notes that at both administrative hearings, in September 2016 and in July 2019, the cover page of the transcript indicates the case concerned claims for DIB, Tr. 80, 1124, and the ALJ stated specifically that each hearing concerned Plaintiff's "application under Title II of the Social Security Act," Tr. 82, 1126. Although the first page of the ALJ's decisions indicate the case involved claims for DIB and SSI, Tr. 16, 1101, the ALJ did not acknowledge Plaintiff's claim for SSI at the hearings.[9] At the July 2019 hearing the ALJ further clarified for Plaintiff that "in order to be entitled to benefits, you have to show disability prior to September 30 of 2015." Tr. 1128. The ALJ noted that the prior hearing [on September 23, 2016] occurred after that date so his "questioning will really just confirm what we talked about the first time[.]" *Id.*

When examining an SSA disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence. 42 U.S.C. § 405(g); *Johnson v. Barnhart,* 434 F.3d 650, 653 (4th Cir. 2005). "The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law." *Mansouri v. Comm'r of Soc. Sec. Admin.*, No. 8:14-CV-02251-JMC, 2015 WL 5009260, at *4 (D.S.C. Aug. 20, 2015) (citing *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *Keeton v. Dep't of Health & Human Servs.,* 21 F.3d 1064, 1066 (11th Cir. 1994)). "'An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.'" *Taylor v. Colvin*, No. 3:12-CV-08626, 2013 WL 6243716, at *15 (S.D.W. Va. Dec. 3, 2013) (quoting *Mayes v. Massanari,* 276 F.3d 453, 459–60 (9th Cir.

---

[9] The court notes that Plaintiff was represented by Counsel at both hearings, and neither objected to the ALJ's failure to acknowledge the SSI claim.

18

2001)). "When considering the adequacy of the record, a court must look for evidentiary gaps that result in 'unfairness or clear prejudice' to the claimant." *Id.* (citing *Brown v. Shalala,* 44 F.3d 931, 935 (11th Cir. 1995)). Without knowledge of which date the ALJ considered in evaluating Plaintiff's SSI claim, and without an adequate explanation of the ALJ's assessment of Plaintiff's SSI claim, the court cannot conduct a meaningful review of the ALJ's decision. Accordingly, remand is necessary.

2. Plaintiff's Remaining Allegations

In the first of her remaining allegations of error Plaintiff contends that on remand the ALJ failed to account for relevant evidence, resulting in an improper evaluation of her mental RFC. Pl.'s Br. 25-26. Plaintiff states that this failure resulted in the ALJ changing her RFC in the second decision to one that is less limited mentally than in the first decision. *Id.* at 26. Plaintiff specifically notes that in his first decision the ALJ limited her to occasional contact with the public and co-workers, but in the second decision he eliminated any restriction to co-worker interaction. *Id.* Plaintiff also contends the ALJ failed to evaluate evidence of mental impairments related to her anxiety and agoraphobia that post-dated her DLI. *Id.* at 30. The Commissioner argues that the ALJ reasonably assessed Plaintiff's mental functioning and incorporated by reference the evidentiary summary from the prior decision. Def.'s Br. 22. While it is true the ALJ indicated that he "carefully considered" all the exhibits of record, Tr. 1108, it is unclear if the ALJ's modification of Plaintiff's RFC is based on substantial evidence. This is especially concerning given the ALJ's statement that "[c]omplaints regarding agoraphobia are not documented until after the date last insured." Tr. 1113. As discussed above, the ALJ's consideration of the evidence as it relates to Plaintiff's claim for SSI does not end as of her date last insured.

19

Plaintiff also alleges that the ALJ failed to properly evaluate medical opinion evidence and her subjective complaints. Plaintiff further alleges the ALJ failed to satisfy the Commissioner's burden to show that there was other work that she could perform. These allegations of error apply to Plaintiff's claims for DIB and for SSI.

Because the court is remanding this matter to determine the proper dates and consideration of the evidence related to Plaintiff's SSI claim, the ALJ should also use that opportunity to re-evaluate the issues regarding Plaintiff's remaining claims and provide a proper explanation of his findings pursuant to SSR 96-8p, 1996 WL 374184 (July 2, 1996).

III.    Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the court finds remand is warranted. Based on the foregoing, the court hereby reverses the decision of the Commissioner pursuant to Sentence Four of 42 U.S.C. § 405(g) and remands the matter to the Commissioner for further proceedings consistent with this order.

In light of the pendency of this application for disability benefits for over seven years, the agency is directed to conduct an administrative hearing on remand and to issue a decision by the Administrative Law Judge within 90 days and a final agency decision within 120 days. *Lawer v. Berryhill*, No. CV 0:16-3739-RMG, 2017 WL 5125517, at *1 (D.S.C. Nov. 1, 2017) (remanding with deadline for final agency decision on claim pending over four years).

**IT IS SO ORDERED.**

February 2, 2021                                               Kaymani D. West
Florence, South Carolina                                       United States Magistrate Judge